**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| HOWARD CRUTCHFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) NO. 1:14-CV-00009-RL-RBC |
| | ) |
| CAROLYN W. COLVIN | ) |
| COMMISSIONER OF THE | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to the Plaintiff, Howard Crutchfield. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

## BACKGROUND

On December 31, 2010, the Plaintiff Howard Crutchfield ("Crutchfield") filed an application for Disability Insurance Benefits ("DIB"). Crutchfield alleged his disability began on April 6, 2010, due to: symptoms associated with diabetes; a

heart condition only operating at 45%; blindness in his right eye; a kidney condition only operating at 24.6%; a hernia on the right side; poor short-term memory; high blood pressure; and being prone to sinus and eye infections. (Tr. 134.) The Social Security Administration denied Crutchfield's initial application on May 20, 2011, and on reconsideration on August 1, 2011. (Tr. 44.) Crutchfield filed a written request for a hearing on August 25, 2011. (*Id.*) On June 22, 2012, a hearing was held before Administrative Law Judge Steven J. Neary ("ALJ") in Fort Wayne, Indiana. (Tr. 15-38, 44-51.) Crutchfield appeared with counsel, Kenneth E. McVey, III. (Tr. 44.) Crutchfield and Marie N. Kieffer, an impartial Vocational Expert ("VE"), provided testimony at the hearing. (Tr. 17-37.) On August 31, 2012, the ALJ denied Crutchfield's DIB claim, finding that Crutchfield was not disabled because, after consideration of the record, Crutchfield has the Residual Functional Capacity ("RFC") to perform the full range of light work and is capable of performing past relevant work despite his limitations. (Tr. 47-51.)

On October 15, 2012, Crutchfield requested that the Appeals Council review the ALJ's decision; his request was denied on October 9, 2013. (Tr. 6, 14.) Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Crutchfield has initiated the instant action for

judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

DISCUSSION[1]

Crutchfield was born on March 28, 1953, and was 57 years old on the alleged disability date of April 6, 2010. (Tr. 120.) In the past fifteen years, Crutchfield's past relevant work involves work as a machinist making wooden musical instruments at Fox Products. (Tr. 18-19, 135.)

The medical evidence can be summarized as follows:

Crutchfield was hospitalized on April 6, 2010, after experiencing chest pain. (Tr. 204-05.) Dr. Joseph Greenlee III, M.D., diagnosed Crutchfield with multivessel coronary artery disease, noting that he manifested inferior and lateral changes on his electrocardiogram with a bundle-branch pattern, and had suffered a significant size infarction based on troponins and wall motion abnormalities. (Tr. 205.) Dr. Greenlee recommended a surgical revascularization. (*Id.*) On the same date, Crutchfield went through cardiac catheterization, coronary angiography and left ventriculography. (Tr. 246-47.) The final impression of these tests were severe multivessel coronary artery disease involving the left anterior descending,

---

[1] These facts have been borrowed liberally from the parties' briefs.

circumflex, obtuse marginal one, distal right coronary artery, and posterior descending artery, mild ischemic cardiomyopathy with inferior wall motion abnormality, ejection fraction of 45%, elevated left ventricular filling pressures and an end-diastolic pressure of 22. (Tr. 247.) On April 7, 2010, Crutchfield underwent an echocardiogram ("EKG"), the final impressions of which were a mild segmental wall motion abnormalities of the septum and inferolateral wall of the left ventricle consistent with ischemic heart disease, mild left ventricular dysfunction reduced ejection fraction to 45%, left ventricular hypertrophy, and appearance of slightly dilated left atrium. (Tr. 269-70.) On April 7, 2010, Crutchfield was diagnosed with diabetes mellitus, type 2, and was noted to have no palpable pulses in his feet and diffusely hypoactive reflexes generally. (Tr. 207-08.)

On April 9, 2010, Crutchfield underwent coronary artery bypass grafting. (Tr. 219.) On April 11, 2010, Crutchfield had X-rays taken which showed the cardiomediastinal silhouette and pulmonary vessels were stable, the lungs showed stable perihilar infiltrates, and a left pleural effusion was seen, which suggested a resolving congestive heart failure with possible associated pneumonia. (Tr. 244-45.) Crutchfield was discharged on April 13, 2010, with the final diagnosis of (1) acute anterolateral/inferior lateral myocardial infarction likely

occurring on April 5, 2010, (2) severe multilevel coronary artery disease, (3) mild left ventricular dysfunction secondary to ischemic cardiomyopathy, (4) hypertension with hypertensive vascular disease, and (5) diabetes mellitus. (Tr. 219.)

On April 30, 2010, treating cardiologist Dr. Michael J. Mirro, M.D., noted that Crutchfield was unable to attend formal cardiac rehabilitation due to cost issues. (Tr. 295-97.) Crutchfield was provided with instructions for a home walking program and guidelines to assess his heart rate and exercise currently at a heart rate of "no higher than 20 beats from his resting heart rate." (Tr. 295.) Dr. Mirro summarized the diagnosis as multivessel atherosclerotic coronary artery disease with an un-bypassed hazy 25-50% stenosis in the mid-left main and non-obstructive proximal circumflex, with complete occlusion of the circumflex after the takeoff of the first obtuse marginal, with 75% proximal stenosis in the first obtuse marginal. (Tr. 296.) Dr. Mirro further noted that Crutchfield had previously had 50-75% narrowing of the left anterior descending, but this had been grafted, as well as two serial 75% narrowing of the distal right coronary artery, which had also been grafted. (*Id.*) Dr. Mirro also noted that Crutchfield had mild ischemic cardiomyopathy with an ejection fraction of 45%. (*Id.*)

From April 16, 2010, to November 16, 2010, Crutchfield went to multiple treatment visits with Dr. C. Bryan Wait, M.D., and

5

reported to be feeling "pretty good" with no dyspnea or chest pain. (Tr. 298-305, 310-32.) However, Crutchfield's diabetes was reported as not controlled several times. (*Id.*)

On February 21, 2011, Dr. Randell Coulter, D.O., examined Crutchfield at the Commissioner's request. (Tr. 266-67.) Crutchfield's blood pressure was high at 164/99, and his active medications were Coreg, Plavix, Zocor, ASA, Lisinopril, Novolog, and Lantus. (Tr. 266.) Crutchfield reported numbness and tingling in his feet, and informed Dr. Coulter of his history of coronary artery bypass surgery. (*Id.*) Upon examination, Dr. Coulter noted Crutchfield's right inguinal hernia, "grossly normal" gait, and decreased sensation in the feet. (Tr. 267.) Dr. Coulter opined that Crutchfield's diabetes and resulting neuropathy in his feet may cause difficulty with prolonged standing and walking, and that Crutchfield is able to maintain balance during ambulation while carrying objects less than ten lbs. (*Id.*) Dr. Coulter further stated that Crutchfield could lift or carry less than ten pounds or over ten pounds occasionally, and is able to stand/walk two hours in an eight hour day. (*Id.*)

On February 26, 2011, psychologist, Dr. Amanda L. Mayle, Psy.D., evaluated Crutchfield at the Commissioner's request. (Tr. 256-64.) Dr. Mayle noted that Crutchfield mentioned his memory problems began after his April 2010 heart attack. (Tr. 256.)

Crutchfield reported examples of his memory problems, such as: causing a flood in the bathroom because he forgot to turn off water; needing to stay with food he is cooking or he fears he will cause a fire; and forgetting what his wife tells him, despite repeating herself multiple times. (Tr. 259.) Crutchfield also stated he could no longer hold a job because of the rapid decline in his memory and not being able to remember instructions or what he was doing. (*Id.*) Crutchfield also needed his wife's assistance to manage his funds. (Tr. 258.) Based on Dr. Mayle's clinical evaluation, she opined that Crutchfield had poor immediate memory and marginal recent and remote memory. (Tr. 257, 259.) Based on testing with the WMS-IV to assess Crutchfield's memory function, Dr. Mayle determined that Crutchfield had low average memory level overall, with borderline function of visual working memory, low average function in auditory and immediate memory and average function in visual and delayed memory. (Tr. 259-60.) Dr. Mayle found "No Diagnosis" of clinical or personality disorders and a Global Assessment of Functioning ("GAF") score of 50, and noted "[h]ealth issues, unemployment, [and] memory difficulty" in summarizing Crutchfield's diagnosis. (Tr. 258.)

On March 3, 2011, a non-examining State agency psychologist, Dr. William A. Shipley, Ph.D., found that Crutchfield had no medically determinable impairment. (Tr. 342.) He noted

Crutchfield's "[p]oor short term memory," as well as Dr. Mayle's findings of "memory issues. Intermediate memory was poor; recent & remote memory were marginal. . . . Auditory memory was low average; visual memory was average; and visual working memory was borderline." (Tr. 354.) He also noted that Dr. Mayle had not given Crutchfield a diagnosis. (*Id.*) A second non-examining psychologist, Dr. Joelle J. Larsen, Ph.D., reviewed and affirmed this opinion without comment. (Tr. 374.)

On April 25, 2011, Crutchfield underwent an EKG at the Commissioner's request. (Tr. 357-58.) The assessment revealed a very mild septal hypokinesis, but with preservation of left ventricular systolic function, and an ejection fraction of 56%. (Tr. 358.)

On May 17, 2011, Crutchfield underwent an ophthalmology evaluation at the Commissioner's request. (Tr. 361-65.) Crutchfield's uncorrected visual acuity was 20/70 right and 20/50 left, but corrected with glasses was 20/40 right and 20/25 left. (Tr. 362.) The examining ophthalmologist noted, "[a]s far as eyes[,] assume he could be working at something." (Tr. 363.)

On May 19, 2011, a non-examining State agency physician, Dr. Fernando R. Montoya, M.D., noted that Crutchfield could perform light exertional activity, disagreeing with Dr. Coulter's opinion as "not [consistent with] the rest of the [medical

evidence of record] and are given minimal weight." (Tr. 366-73.) On July 27, 2011, a second non-examining doctor, Dr. B. Whitley, M.D., reviewed and affirmed this opinion without comment. (Tr. 375.) On July 29, 2011, a third non-examining State agency physician, Dr. Nathaniel Arcega, M.D., affirmed the prior State agency opinion, rejecting Dr. Coulter's opinion as not supported because the diagnosis of neuropathy in his feet was made with minimal findings and because Crutchfield's ejection fraction was normalized to 56% after his bypass. (Tr. 377.)

On October 24, 2011, Crutchfield was hospitalized again due to recurrent chest pain. (Tr. 378-81.) An EKG revealed a left ventricular ejection fraction of 55%. (Tr. 382, 386.) A left heart catheterization demonstrated severe three-vessel native coronary artery disease with a patent left internal mammary artery to the left anterior descending, and a patent saphenous vein graft to the obtuse marginal and saphenous vein graft to the posterior descending artery, with preserved left ventricular function. (Tr. 382.) Small vessel disease was believed to be the cause of his angina. (Tr. 382, 420-21.) However, after the heart catheterization, Crutchfield signed himself out of the hospital due to financial reasons. (Tr. 382, 420.) Crutchfield also reported difficulty obtaining medications due to lack of funds. (Tr. 382-83.)

Crutchfield returned to Dr. Wait on October 26, 2011, and
November 9, 2011. (Tr. 408-15.) Crutchfield informed Dr. Wait
that he was having difficulty affording treatment, but was
otherwise feeling "pretty good" without chest pain. (Tr. 412.)

Hearing Testimony

At the hearing on June 22, 2012, Crutchfield testified that
he had not worked since he was laid off sometime in 2009 by Fox
Products, where he ran machinery to make wooden musical
instruments. (Tr. 18-19, 26.) Crutchfield said he collected
unemployment benefits after being laid off, up until two or
three weeks before the hearing in 2012. (Tr. 25.) Crutchfield
said he contacted lumber companies after being laid off, but
they told him his medical problems would be an issue in
obtaining employment with them. (Tr. 27.)

Crutchfield was asked if he could still do the job he held
at Fox Products. (Tr. 19.) He responded that the job does not
exist anymore, but that if it did, he could try but he has had
memory problems since his second heart attack. (*Id.*)
Crutchfield testified that if he did go back, it would probably
have to be part-time because he would not be able to last a full
day. (Tr. 32.)

Crutchfield testified that he has memory issues, a huge
hernia, vision problems, low kidney function and infections.
(Tr. 20.) He further testified that he can only walk for

approximately fifteen minutes before getting short of breath, cannot stand very long without getting numb knees, and cannot sit for longer than forty-five minutes because of circulation issues. (Tr. 21-22.) Crutchfield stated that arthritis in his hands requires him to take breaks when washing dishes, such that he has to sit down and come back to it. (Tr. 23.) He can vacuum, but must take breaks. (Tr. 24.) He stated he does not do much for fun anymore, but if he goes out, he does so with his family. (*Id.*)

Crutchfield indicated he was taking medications but could not remember exactly which ones. (Tr. 24-25.) He noted that to work around his memory issues, he leaves his pills out in the open to remind himself to take them. (Tr. 31.) Crutchfield testified that he checks his blood sugar two to three times a day. (Tr. 30.) He takes two insulin medications, Novolog and Lantus. (Tr. 29-30.) He also takes lisinopril to keep his blood pressure under control. (Tr. 32.) Crutchfield claims he only takes nitro pills if he is fighting off a heart attack, and has not taken one for a year. (Tr. 31.)

Crutchfield testified that his doctors told him that he had a chance at living a normal life after his second heart attack, but after his third heart attack, he was not able to bounce back like he did after his bypasses. (Tr. 28-29.) Crutchfield maintained that he has no stamina, and does not know how long it

will take him to finish something he starts. (Tr. 29.) He claimed that it took him two hours to get ready for the hearing and that his daughter had to help him get there. (Tr. 27.)

The ALJ questioned Crutchfield's assertions about his shortness of breath and numbness of lower extremities because he could not find medical evidence to support these allegations. (Tr. 32-33.) Crutchfield testified that he had visited Dr. Wait for symptoms but does not go often because of lack of funds, and that he had told Dr. Wait that if he was not dying, he would not bother him. (Tr. 33.)

The VE testified about a hypothetical individual consistent with the ALJ's RFC determination. (Tr. 34-37.) The VE explained that if including only the light exertion, Crutchfield's job could be performed as he performed it or as it is usually performed in the economy. (Tr. 35.) She stated that if the individual was limited to not being able to lift more than 20 pounds, he could still do the job, but only as Crutchfield performed it, not as it is typically performed in the economy. (*Id.*) If the hypothetical individual was not able to engage in complex or detailed tasks, but could do simple, routine tasks of unskilled work, the VE testified that he would not be able to do Crutchfield's past work. (Tr. 36.) The VE also stated that with the limitations consistent with the

testimony Crutchfield presented, there would be no jobs that he could perform that exist in significant numbers. (*Id.*)

## REVIEW OF THE COMMISSIONER'S DECISION

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing the evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). A reversal and remand may also be required if the ALJ "based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citation omitted).

As a threshold matter, for a claimant to be eligible for benefits under the Social Security Act, the claimant must establish that she is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five-step evaluation:

Step 1: Is the claimant performing substantial gainful activity? If yes, the claim is disallowed; if no, the inquiry proceeds to step 2.

Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404 Subpart P, Appendix 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy? If yes, the claim is denied; if no, the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v);

*Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

In this case, the ALJ found that Crutchfield met the insured status requirements of the Social Security Act through December 31, 2014. (Tr. 46.) At Step One, the ALJ found that Crutchfield had not engaged in substantial gainful activity since April 6, 2010, the alleged onset date. (*Id.*) At Step Two, the ALJ found that Crutchfield suffered from the following severe impairments: coronary artery disease and diabetes. (*Id.*) At Step Three, the ALJ found that the impairments or a combination of the impairments did not meet or medically equal any of those included in the listing of impairments at 20 C.F.R. § 404 Subpart P, Appendix 1. (Tr. 47.) The ALJ determined that Crutchfield retained the RFC to perform the full range of light work with no limitations. (Tr. 48-49.) At Step Four, the ALJ determined that Crutchfield was capable of performing his past relevant work as a maker of musical instruments, as it does not require the performance of work related activities precluded by Crutchfield's RFC. (Tr. 50.)

Crutchfield argues that the ALJ committed several errors requiring the reversal of his decision. (DE #15.) Crutchfield maintains that the ALJ erred in rejecting the opinions of the examining physician and examining psychologist. He further argues that the ALJ's Step Four determination fails to comply with the Commissioner's rules and regulations. As a result of

these errors, Crutchfield requests the Court reverse and remand the Commissioner's decision.

## Weight Given to the Examining Physician and Psychologist

Crutchfield argues that the ALJ's rejection of the opinions of the examining physician, Dr. Coulter, and the examining psychologist, Dr. Mayle, in favor of the later reviewers' opinions resulted in a flawed RFC determination and harmful error at Step Four.

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. But when the ALJ rejects or discounts the opinion of the agency's own examining physician that the claimant is disabled, a reviewing court can be expected to "take notice and await a good explanation for this unusual step." *Id.* "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Id.* (quoting *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)).

Here, Crutchfield argues that the ALJ improperly rejected Dr. Coulter's opinion. Upon examining Crutchfield, Dr. Coulter noted his history of prior myocardial infarction with high blood pressure and coronary artery disease, and documented his high blood pressure of 164/99 despite medication. (Tr. 266.) Dr.

16

Coulter concluded that Crutchfield may have difficulty with prolonged standing and walking, and limited him to two hours standing and two hours walking in an eight hour day. (Tr. 267.) Dr. Coulter noted Crutchfield's grossly normal gait, albeit with "[d]ecreased sensation noted to the feet" and diagnosed him with neuropathy in the feet. (*Id.*) These opinions correspond with Crutchfield's subjective reports of numbness and tingling in his feet (Tr. 266), as well as Dr. Beyer's earlier notation of no palpable pulses in Crutchfield's feet during his 2010 hospitalization (Tr. 207).

The ALJ accorded greater weight to the opinions of non-examining State agency physicians than to Dr. Coulter's opinion, relying on the fact that these physicians "had the entire record before them and did not have to rely on the claimant's allegations of limitation that are not entirely credible to the extent that the one-time physical examiner [Dr. Coulter] did." (*Id.*); *see* SSR 96-6p (State agency medical consultant's opinion may be entitled to greater weight if the opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source"). But the State agency physicians did not review "the entire record" in forming their opinions. Rather, their opinions were rendered prior to the

addition of other objective medical evidence, including Crutchfield's October 24, 2011, hospital records, EKG, and left heart catheterization report. (Tr. 379-81, 391-97, 406, 428-29.) Thus, the basis on which the ALJ afforded the State agency opinions greater weight, *i.e.*, their alleged access to the entire record, was incorrect. However, an error is harmless "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The Commissioner argues that these records merely support the reviewing physicians' and the ALJ's finding that Crutchfield had coronary artery disease.[2] Crutchfield claims that the reviewing physicians and the ALJ improperly focused on Crutchfield's ejection fraction in finding that Crutchfield was capable of light exertional activity, and that the additional records support a limitation to sedentary exertional activity. (*See, e.g.,* Tr. 377 (reviewing physician notes rejecting Dr. Coulter's opinion, stating in part that "following bypass[,]

---

[2] The additional records show that Crutchfield had a severe three-vessel native coronary artery disease with a patent left internal mammary artery to the left anterior descending, and a patent saphenous vein graft to the obtuse marginal and saphenous vein graft to the posterior descending artery, with preserved left ventricular function. (Tr. 420-21, 428-29.) Small vessel disease was believed to be the cause of Crutchfield's angina, even though the EKG demonstrated a normal functioning heart. (Tr. 420-21.)

claimant's EF normalized to 56%").) According to Crutchfield, ejection fraction is irrelevant because the listing criteria for coronary artery disease do not require or discuss ejection fraction. *See* 20 C.F.R. Part 404, Subp. P, Appx. 1, Listing 4.04(C). By allegedly focusing on ejection fraction, Crutchfield claims that the reviewing physicians and the ALJ failed to address an un-contradicted line of evidence supporting disability.

A review of the decision reveals that the ALJ considered Crutchfield's ejection fraction, but found that it did not meet the listing criteria for any cardiovascular disease in section 4.00 of Appendix 1. (Tr. 47.) The ALJ also specifically addressed the records not reviewed by the State agency physicians, acknowledging that Crutchfield's heart catheterization found "severe three vessel native coronary artery disease." (Tr. 48.) While the ALJ noted that the EKG showed "a normal ejection fraction of 55%," he also listed other results indicating no evidence of another acute myocardial infarction. (*Id.*) Thus, it does not appear that the ALJ's decision focused on ejection fraction, and specifically considered the records not reviewed by the non-examining State agency physicians.

The ALJ stated that he gave "greater weight to the reviewers' opinions and agrees that the medical evidence does not support a

finding that the claimant is as limited as the consultative examiner stated." (Tr. 49.) In rejecting Dr. Coulter's opinion, the ALJ found that,

> [d]espite the claimant's decreased sensation in his feet, his gait was normal and his balance while standing was normal at the consultative exam. The claimant did not complain of numbness in his feet and legs to Dr. Wait. In fact, the claimant told Dr. Wait that he had been increasing his walking and bike riding for exercise as his cardiologist wanted him to do since he could not afford to be in a formal cardiac rehabilitation program.

(*Id.*) The Court finds that the ALJ supported the decision to discount Dr. Coulter's opinion with substantial evidence, that is, relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Crutchfield also challenges the ALJ's rejection of Dr. Mayle's opinion. The ALJ gave Dr. Mayle's opinion "little weight" in determining Crutchfield's RFC, stating that:

> The GAF of 50 assigned by [Dr. Mayle] is puzzling in light of no finding of any medically determinable mental impairment and mostly average memory functioning[], and is given little weight. The reviewing State Agency psychologists concluded that the claimant has no medically determinable mental impairment, and the undersigned gives these opinions the greatest weight by not including any mental limitations in the claimant's [RFC] above.

(Tr. 50.) While the ALJ was not required to accord weight to the GAF of 50, he mischaracterized Dr. Mayle's finding of Crutchfield's memory functioning as "mostly average." (Tr. 50.) Dr. Mayle found that Crutchfield had "poor" immediate memory,

"marginal" recent memory and "marginal" remote memory. (Tr. 257-59.) The WMS-IV test performed by Dr. Mayle indicated "low average" functional memory level overall, with a "borderline" function of visual working memory, and "low average" function in both auditory memory and immediate memory. (Tr. 259-60). Only Crutchfield's visual memory and delayed memory were found to be "average" under the WMS-IV test. (*Id*.). Non-examining State agency psychologist Dr. Shipley also noted Crutchfield's "[p]oor short term memory," and Dr. Mayle's findings of memory issues based on her examination and the WMS-IV test. (Tr. 354.) The ALJ's decision does not explain why Dr. Mayle's opinion regarding Crutchfield's memory limitations was rejected.

The ALJ acknowledged that Dr. Mayle's examination "suggest[s] that the claimant has some mild difficulty with his memory[,]" but found it "does not suggest a severe impairment in memory or a cognitive disorder." (Tr. 47.) An ALJ must consider the aggregate effect of the entire medical record, including those impairments that, in isolation, are not severe. 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Setting aside the issue of whether Crutchfield's memory impairment was severe or non-severe, the ALJ failed to consider evidence of this impairment in determining Crutchfield's RFC limitations.

The ALJ found that Crutchfield could perform his past

relevant work as an instrument maker, and that this work does not require the performance of work related activities precluded by his RFC. (Tr. 50.) However, the VE testified that if a hypothetical individual could not engage in complex or detailed tasks, but was limited to simple, routine tasks consistent with unskilled work, he would be unable to perform Crutchfield's past relevant work. (Tr. 36.) The VE also testified that an individual with the limitations presented could not perform any jobs that exist in significant numbers. (*Id*.) This testimony demonstrates the significance of the ALJ's failure to consider Crutchfield's memory limitations in determining the RFC finding and whether Crutchfield could perform his skilled past relevant work. Had Crutchfield's memory limitations been incorporated into the RFC finding, Crutchfield may have been deemed unable to perform his past skilled work. For the reasons set forth above, this case is **REMANDED** so that the ALJ may address the opinion of Dr. Mayle.

Crutchfield's Remaining Arguments

Having found remand necessary on the basis of the ALJ's inadequate finding as to Dr. Mayle's opinion, the Court finds no compelling reason to address Crutchfield's remaining arguments in detail. The Court makes no findings regarding the merits of Crutchfield's DIB claim. On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the

parties the opportunity to expand the record so that the ALJ may build a logical bridge between the evidence and his conclusions.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).


**DATED: March 31, 2015**                    **/s/ Rudy Lozano, Judge**
                                             **United States District Court**